United States District Court
Southern District of Texas

**ENTERED**
September 06, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVAN NORMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-01042 |
| | § | |
| LEE INGLE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

## I.   INTRODUCTION

Pending before the Court are the defendants', Harris County ("The County"), and Sheriff Ed Gonzalez ("Gonzalez"), motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 14, 23). The plaintiff, Evan Norman ("Norman"), has filed responses to the defendants' motions (Dkt. No. 21, 28), and the defendants have filed replies (Dkt. No. 22, 29). After reviewing the motions, responses, replies, the pleadings, the relevant exhibits, and the applicable law, the Court determines that the defendants' motions should be **GRANTED**.

## II.   FACTUAL BACKGROUND

On March 21, 2021, Evan Norman, a 36-year-old, entered Bombshells on I-45 South in Houston, Texas. That night, Norman claims he was depressed and within two hours, Bombshell served Evan at least seven alcoholic beverages, despite his visible intoxication. He experienced loss of motor and mental skills, slurred speech, and eventual loss of consciousness.

Harris County Sheriff's deputies Sutton and Ingle, working off duty at Bombshells, allegedly were aware of the establishment's tendency to overserve customers. On this occasion,

1 / 6

Norman claims that deputy Ingle escorted him towards the front door using physical force and verbally abused him. Outside Norman requested the deputies' names and badge numbers in order to file a complaint, which purportedly irritated Sutton and Ingle.

Ingle then allegedly tackled Norman, punching him repeatedly in the head and face, while Sutton held Norman down. Norman claims that he was not resisting at the time nor attempting to assault anyone. He was handcuffed after the beating. Neither Sutton nor Ingle sustained injuries, but Norman suffered substantial bleeding.

Norman was taken to Ben Taub Hospital, where he was diagnosed with multiple injuries, including fractures to his nasal bones, orbital rim, and maxilla, as well as extensive bruising and abrasions. He also suffered from subcutaneous emphysema, hemorrhages, and other severe injuries.

Ingle claimed that Norman assaulted him, leading to Norman's arrest a felony charge. The felony charge persisted for 21 months before being dismissed. Norman claims that he spent thousands in legal fees. As a result, he lost his job, experienced significant family issues, and has ongoing medical problems.

Norman claims that the Harris County Sheriff's Office, led by Sheriff Ed Gonzalez, has a policy of failing to properly investigate complaints made to the Internal Affairs Department if a criminal case is pending. Sheriff Gonzalez was allegedly aware of Ingle's history of using excessive force prior to hiring him.

## III.    PLAINTIFF'S CONTENTIONS

Norman brought claims under 42 U.S.C. § 1983 against Harris County, alleging violations of his constitutional rights. He contends that the actions of Sutton and Ingle violated his rights under the Fourth, Fourteenth, and First Amendments to the United States Constitution.

As a result of their unconstitutional actions, Norman contends he suffered severe emotional distress and physical injuries. He further contends that Harris County and Sheriff Gonzalez have engaged in policies and practices that evidences deliberate indifference to the care and custody of citizens and detainees. This indifference resulted in his unlawful detention, false arrest, and malicious prosecution.

Norman also alleged that Harris County failed to follow state and federal laws and regulations, as well as its own policies and procedures, regarding the standards of care, use of force, freedom of speech, and probable cause for arrest and prosecution. These failures he claims are part of a broader pattern of improper policies and customs.

## IV.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss for "failure to state a claim upon which relief can be granted." Under the demanding standards of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). Dismissal is appropriate only if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court's review is limited to the allegations in the complaint and any documents attached to a defendant's motion to dismiss, if they are both referred to in the complaint and central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## V.   ANALYSIS & DISCUSSION

### A.  Harris County

#### a.   Insufficient Allegations of Official Policy or Custom

Under *Monell*, a municipality can be held liable under *§ 1983* for only its own illegal acts and not under the theory of *respondeat superior*. To establish municipal liability, the plaintiff must demonstrate: (1) An official policy or custom, (2) promulgated by a final policymaker, (3) that was the moving force behind the violation of constitutional rights. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Norman recognizes three bases upon which he must establish a municipal policy that resulted in a violation of his federal rights: (1) written policy statements, ordinances, or regulations, (2) widespread practices so permanent and well-settled as to constitute a custom, (3) and single decisions by final policymakers. However, Norman fails to identify a specific written policy or ordinance that was the cause of the alleged constitutional violations he alleged. Without concrete examples of such policies, the claim under the first prong of *Monell* is untenable.

Norman also argues the existence of a widespread practice. However, he does not cite to other specific instances of a widespread policy, Hence, isolated incidents are not sufficient to demonstrate a pattern of widespread practices. *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009). Norman's allegations are simply that; isolated occurrences rather than a pervasive custom or practice. Finally, the second prong of *Monell* is unsupported by facts.

Norman's argument under the single decision by a final policymaker prong is insufficient. Supreme Court precedent underscores the fact that only decisions made by officials with final policymaking authority could represent municipal policy in some instances. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). However,

Norman has not demonstrated that any alleged decision or action was made by a final policymaker at Harris County.

### b.  Failure to Train and Other Claims

Regarding his failure to train contention, Norman must show that Harris County's lack of training amounted to deliberate indifference to the rights of individuals. Deliberate indifference must be demonstrated through a pattern of similar violations that would have put Harris County on notice of the conduct. *Connick v. Thompson*, 563 U.S. 51 (2011). Norman has not provided evidence of such a pattern. Consequently, his allegations do not meet the stringent standard required for a failure to train claim. *Id*. The same goes for other claims that Norman merely mentions against Harris County but does not provide a sufficient factual or evidentiary basis to support the claims.

### c.  Conclusion

Norman's complaint lacks the necessary factual specificity and plausible allegations to establish a claim for municipal liability under *§ 1983*. The failure to identify a specific policy or custom, demonstrate a pattern of constitutional violations, or other actions attributable to a final policymaker is fatal to Norman's complaint.

Therefore, Harris County's motion to dismiss is Granted, and Norman's claims are dismissed without prejudice. Norman may amend his complaint if there are additional facts supporting his claims that will amend this complaint into compliance with FRCP, Rule 12(b)(6).

### B.  Sheriff Gonzalez in his Official Capacity

The claims against Sheriff Gonzalez, when scrutinized, are the same claims made against Harris County. Sheriff Gonzalez is not a policy maker; hence the claims are redundant. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Further, there is no evidence of a direct causal

relationship between Sheriff Gonzalez and the two deputies who allegedly assaulted Norman. To hold a supervisor liable in his official capacity, there must be a direct link between the policy, a practice, and the constitutional violation. *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420-21 (5th Cir. 2017). Norman has failed to establish this necessary link.

Moreover, Gonzalez invokes the principles of qualified immunity, arguing that the lack of specific allegations against him warrants dismissal even in his official capacity. While qualified immunity generally applies to individual capacity claims, the principles necessitating specific allegations of wrongdoings apply broadly to claims lacking substantial connection to an official's conduct. *Garcia v. Blevins*, 957 F.3d 596,600 (5th Cir. 2020). The absence of direct allegations against Sheriff Gonzalez fail to support a claim for an official or individual liability. Therefore, the claims against Sheriff Gonzalez in his individual and official capacities is Granted.

## VI.     CONCLUSION

Based on the foregoing analysis and discussion, the defendants' motions to dismiss are **GRANTED**.

It is so **ORDERED**.

SIGNED on September 5, 2024, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge